## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RUDOLPH WORDLAW, Individually, and on Behalf of all others Similarly Situated,** | : : : | CIVIL ACTION NO. |
| **Plaintiff,** | : : : | 3:15-cv-187-TCB-RGV |
| **v.** | : : | |
| **FLOWERS FOODS, INC. and FLOWERS BAKING COMPANY OF VILLA RICA, LLC,** | : : : : | |
| **Defendants.** | : : | |

## COMPLAINT

Plaintiff, on behalf of himself and other similarly situated individuals, by and through their undersigned counsel, file this Collective Action Complaint and aver as follows:

## NATURE OF ACTION

1.       This is a Collective Action Complaint brought to obtain declaratory and monetary relief on behalf of a class of individual employees, past and present, who Defendants have misclassified as independent contractors, who distribute fresh bakery products for Defendants, Flowers Foods, Inc.; Flowers Baking Company of Villa Rica, L.L.C.; and any other affiliates or subsidiaries of Flowers

#325656

Foods, Inc. which employ or employed distributors working within the state of Georgia (collectively, "Flowers"). Plaintiffs allege violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. Defendants employ "distributors" to deliver fresh baked goods to their customers (primarily grocery stores, mass retailers, and fast food chains). In addition to delivering Flowers' products to Defendants' customers, distributors stock the products on store shelves and assemble promotional displays designed and provided by Defendants. Distributors are not required to increase sales or customers, or contract directly with customers, are not compensated with bonuses for new customers or increased sales, and are not required to attend sales training or conferences.

3. The FLSA collective group consists of all individuals who are or were employed as distributors for Flowers, and are or were misclassified as independent contractors, anywhere in Georgia, at any time during the applicable limitations period ("Class" or "Distributors") and who were not paid overtime at the rate of at least one and one half of their regular hourly rate.

4. This action challenges the classification of the Class as independent contractors instead of employees, which results in the denial to Plaintiff and the Class of the right to overtime premium pay.

#325656

## PARTIES

5.     Plaintiff Rudolph Wordlaw is a resident of Georgia who worked for Flowers in that state within the last three years. He performed delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff Wordlaw operated out of a warehouse run by Flowers. Plaintiff Wordlaw regularly worked 50–55 hours per week and never received overtime premium pay at any time.

6.     Flowers Foods, Inc., is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757. Flowers hires individuals, whom it misclassifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves. Flowers employs distributors in 31 states throughout the southern and eastern parts of the United States. Flowers Foods may be served by service on its registered agent for service, Corporation Service Company at its business address of 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

7.     Flowers Baking Company of Villa Rica, L.L.C. is a Georgia limited liability company with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757. Upon information and belief, it is a wholly owned subsidiary of Flowers Foods, Inc. It and other Flowers subsidiaries hire

#325656

individuals, misclassifying them as independent contractors, to deliver and stock bakery and bread products from various Flowers warehouses located throughout the state. Flowers Baking Company of Villa Rica, L.L.C. may be served by service on its registered agent for service, Corporation Service Company at its business address of 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

<u>JURISDICTION AND VENUE</u>

8.     This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

9.     Venue is proper in this Court under 28 U.S.C §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this district.

10.     Plaintiff brings this action on behalf of himself and all others similarly situated as a Federal Collective Group, as hereinafter defined.

**<u>COLLECTIVE ACTION ALLEGATIONS</u>**

11.     Plaintiff brings Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of himself and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendants or otherwise, distribute or distributed for Defendants under agreements with Flowers Baking Company of Villa Rica, L.L.C.; or any other affiliates

4

#325656

or subsidiaries of Flowers Foods, Inc. which employ distributors working within the state of Georgia; and who were classified by Defendants as "independent contractors" (collectively "Covered Positions") anywhere at any time in the United States from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

The "Federal Collective Group" includes the named Plaintiff in this action. Plaintiff reserves the right to modify this definition prior to conditional certification of the collective group.

12.     Plaintiff, along with current and former employees of Defendants in Covered Positions, are similarly situated in that they have substantially similar job requirements, pay provisions, and are subject to Defendants' common practice, policy, or plan of controlling their daily job functions and terms and conditions of employment, including payment for work performed.

13.     Defendants regularly permitted, required and encouraged Plaintiff and members of the Federal Collective Group to work more than 40 hours per week without overtime compensation.

14.     Upon information and belief, Defendants knew or should have known that that Plaintiff and all similarly situated individuals were misclassified as independent contractors and were entitled to overtime pay under the FLSA.

#325656

15.    Defendants have therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

16.    Defendants' conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiff and all similarly situated individuals.

17.    Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because the claims of the Plaintiff are similar to the claims of current and former "independent contractors" who worked for Defendants.

18.    Defendants are liable under the FLSA for failing to properly compensate Plaintiff and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## FACTS

19.    Defendant Flowers Foods is a corporation whose business consists of manufacturing, selling and distributing bakery and snack food products to retail customers. Flowers Foods's bakeries and warehouses are operated in Georgia by Defendant Flowers Baking Company of Villa Rica, L.L.C.; and other affiliates or subsidiaries of Flowers Foods.

#325656

20.    Defendant Flowers Foods, by and through its affiliates and subsidiaries, bakes and sells locally bread and bread products through local warehouses. Distributors, such as Plaintiff and members of the Class, arrive at local warehouses and load their vehicles with Defendants' products.

21.    Distributors load and then deliver the product from Defendants' local warehouses to Defendants' local retailer-customers at the time and place specified by Defendants.

22.    The distribution agreement between Defendants and Distributors has no specific end date and can be terminated by either party at any time with limited notice.

23.    Defendant Flowers Foods markets its bakery and snack products to grocery stores, convenience stores and other merchants. Defendant Flowers Foods negotiates directly with the retailers to set virtually all terms of the relationship including:

a.    wholesale and retail prices for products;

b.    service and delivery agreements;

c.    shelf space to display products;

d.    product selection;

e.    promotional pricing for products;

7

#325656

f.      the right to display promotional materials;

g.      print advertisements in retailers' newspaper ads; and

h.      virtually every other term of the arrangement.

24.     In some cases, Flowers Foods directly negotiates and agrees with retailers and fast food restaurants to locally manufacture and distribute the local retailer's store brand (or private label) bread products.

25.     Defendant Flowers Foods often negotiates the above terms for fresh-baked bread and bread products (which are distributed by Distributors and members of the Class) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by Distributors). The result is that Distributors' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.[1]

26.     Plaintiffs do not directly increase sales or customers, or contract directly with customers, are not compensated with bonuses for new customers or increased sales, and are not required to attend sales training or conferences.

---

[1] For example, Flowers sometimes negotiates to manufacture private-label bread at a near-zero profit margin in exchange for the retailer providing space for Flowers' drop-shipped shelf-stable cake products. The result is that Flowers profits off the sale of its shelf-stable products while passing the cost and expense of distributing its loss-leading private label bread to Distributors and the Class, all of whom have no right to reject the arrangement without losing their jobs.

#325656

27.     The relationship between each member of the Class and Defendant is essentially the same in all material respects.

28.     Distributors and members of the Class must strictly follow Defendants' instructions and adhere to the pricing, policies, and procedures negotiated between Defendants  and their retailer-customers.

29.     Distributors use Defendants' hand-held computer to log deliveries, and Defendants bills their customers using the data entered into the computer by the distributor. The terms of the sale are negotiated directly between Defendants and its retailer-customer.

30.     Distributors place Defendants' products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendants are running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendants usually reimburse Distributors for stale or rejected product.

31.     Defendants represented to Distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

#325656

32.     Contrary to its representations, Defendants denied Distributors and the benefits of ownership and entrepreneurial skill by retaining and exercising the following rights and control:

a.      the right and control to negotiate the wholesale price for the purchase and sale of products;

b.      the right and control to negotiate shelf space in the stores in the Distributor's territory;

c.      the right and control to negotiate the retail sale price for products;

d.      the right and control to establish all sales and promotions and to require Distributors and the Class to follow them;

e.      the right and control to change orders placed by Distributors and the Class, to require them to pay for product they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit, with employees who did not attempt to distribute the extra product billed for the full wholesale price of that product;

f.      the right and control to discipline Distributors, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or refusing a specific order to deliver a product to a particular store at a particular time;

#325656

g.     the right and control to handle customer complaints against Distributors and to take disciplinary action;

h.     the right and control to withhold pay for certain specified expenses;

i.     the right and control to unilaterally terminate the employment relationship;

j.     the right and control to unilaterally vary the standards, guidelines, and operating procedures; and

k.     various other rights reserved and control exercised by Defendants.

33.     Distributors were, and are, required to accept Defendants' conditions of employment or face termination.

34.     Defendants not only retained the rights and controls listed above, but they exercised the rights to control the particulars of Distributors' performance as well.

35.     Defendants routinely control product orders to increase the amount of the order. If a Distributor refuses the additional product, Defendants bill the Distributor for the product and deduct the cost from the Distributor's compensation.

36.     Defendants require the Distributor to process all transactions through a hand held computer they provide to them. The hand held computer controls the product prices, maintains customer information, and monitors business performance.

#325656

37.    Defendants control the Distributors' opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing. Specifically, Defendants negotiate the sale of its products with major retailers. Distributors then deliver the products to store locations per the agreement between Defendants and the retailer.

38.    Distributors lack discretion as to what products to distribute to a particular store, whether to run sales or promotions, how frequently to service stores, and similar discretion and control that would allow them to increase (or decrease) the profitability of their work.

39.    Distributors' investment in equipment to operate their route is relatively low.

40.    Many distributors use their personal vehicles and a trailer to transport Flowers products from a local warehouse to retailers.

41.    In performing their duties as distributors, Plaintiff and the class he represents, in part, performed duties on motor vehicles which weighed less than 10,000 pounds.

42.    Specifically, Plaintiff and the other distributors would trucks which weighed less than 10,000 pounds, including Ford F-150 and F-250 Trucks.

43.    Ford F-150 trucks weigh less than 10,000 pounds.

#325656

44.   Ford F-250 trucks weigh less than 10,000 pounds.

45.   The work Plaintiff and the other distributors would perform on trucks which weighed less than 10,000, was more than *de minimis*.

46.   Plaintiff and the other distributors worked in part on vehicles which were designed or used to transport less than sixteen (16) passengers and such vehicles were not used to transport passengers for compensation.

47.   Plaintiff and the other distributors did not transport hazardous materials as that term is defined in 49 U.S.C. § 5103.

48.   Pursuant to the SAFETEA—LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306(c), Plaintiff and the class he represents are expressly classified under the FLSA as non-exempt "covered employee(s)" entitled to overtime pay as required by 29. U.S.C. § 207(a).

49.   Apart from the purchase of a small trailer, there is no other investment necessary because Defendants provide hand held computer equipment (the cost of which is deducted from each Distributor's compensation), administrative support, warehouse space (the cost of which is deducted from each Distributor's compensation),  advertisements, promotional materials, bakery trays, market advice, strategic development, and virtually every other business necessity.

50.     Defendants even arrange for insurance and/or vehicle financing on behalf of Distributors; Distributors pay for the insurance through deductions from their compensation.

51.     The distribution job performed by Distributors and members of the Class  does not require specialized skills or judgment.

52.     The work done by Plaintiff and the other Distributors was an integral and essential part of Defendant's business.

53.     Because Defendants misclassified Distributors and members of the Class as non-employees, they were denied the rights and benefits of employment, including, but not limited to overtime  premium wages.

54.     As an economic reality, Distributors are dependent upon and controlled by the Defendants, and are not in business for themselves.

55.     Distributors are rarely allowed by the Defendants to exercise any managerial skills to increase their opportunity for profit and or reduce their risk of loss.

56.     The relative investment by the Distributors compared to the Defendants is extremely low.

57.     The relationship between the Distributors and the Defendants is relatively permanent.

#325656

58.     Distributors do not exercise any meaningful control over the work performed, which is dominated by the Defendants' system of subsidies, deductions, offsets, and mandatory sales.

59.     Distributors and members of the Class have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to  purchase or pay, or has deducted from or offset against their compensation.

60.     Distributors work, on average, a total of 50–55 hours during a seven-day workweek for which the Distributors receive no overtime premium compensation.

61.     During the relevant time period, Plaintiff Wordlaw worked, on average, in excess of  40 hours every week of the year.

62.     Plaintiff Wordlaw worked 50–55 hours per week on average.

63.     Plaintiff Wordlaw never worked less than 45 hours per week and at times had to work up to 60 hours to service all Defendants  assigned stores.

64.     Plaintiff Wordlaw is aware of other Distributers who worked 50 hours or more per week on average.

#325656

65.     Defendants' mischaracterization of Distributors as independent contractors,  the concealment or non-disclosure of the true nature of the relationship, and the attendant deprivation of substantial rights and benefits of employment,  are all part of an on-going unlawful practice by Defendants.

## COUNT I

**FAILURE TO PAY OVERTIME TO THE FEDERAL COLLECTIVE GROUP IN VIOLATION OF THE FLSA, 29 U.S.C. §§ 207 AND 215 AGAINST BOTH DEFENDANTS ON BEHALF OF PLAINTIFF AND THE CLASS**

66.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in  the preceding Paragraphs.

67.     Section 207(a)(1) of the FLSA provides in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

68.     There are no exemptions applicable to Plaintiff or to other members of  the Federal Collective Group.

#325656

69.     For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of United States in which Defendants conduct business.

70.     Distributors and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

71.     At all relevant times, Defendant Flowers Foods, Inc. has had annual gross operating revenues in excess of $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

72.     At all relevant times, Defendant Flowers Baking Co. of Villa Rica, LLC had had annual gross operating revenues in excess of $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

73.     Plaintiff and the class he represents were not subject to any exemption from the overtime pay requirements of the FLSA.

#325656

74.    Defendants have failed to meet the requirements for any of the exemptions from application of the overtime compensation requirements of the Fair Labor Standards Act under 29 U.S.C. §§ 207 or 213.

75.    Plaintiff and each member of the class are required to be compensated at a rate of one and one half times their regular hourly rate for each hour worked in excess of forty hours in any given workweek.

76.    Defendants knew or should have known that the FLSA applied to Plaintiff and the other Distributors.

77.    Upon information and belief, in failing or refusing to pay Plaintiff and the class he represents overtime as required by the FLSA, Defendants have not relied on any letter ruling from the Department of Labor indicating that Plaintiff and/or the class members were not entitled to overtime.

78.    Upon information and belief, in failing or refusing to pay Plaintiff and the class he represents overtime as required by the FLSA, Defendants have not relied on any legal advice indicating that such practice was permitted under the FLSA.

79.    Defendants have refused to adequately compensate Plaintiff and the class he represents for work in excess of forty (40) hours per pay period, at the rates required by law, and have willfully refused to rectify the situation.

#325656

80.     Defendants are liable to Plaintiff and to each member of the class he represents for compensation for any and all time worked in excess of forty (40) hours per week at the rate of at least one and one-half times the regular rate.

81.     Defendants' conduct constitute willful violations of 29 U.S.C. §§ 207 and 215 of the FLSA, entitling Plaintiff and the class he represents to all relief afforded under the FLSA, including the application of a three (3) year statute of limitations, the award of liquidated damages, and attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the class he represents requests that this Court:

(a) Take jurisdiction of this matter;

(b) Permit this case to proceed as an FLSA collective action under 29 U.S.C. § 216 for those employees, past or present, who opt to participate by filing proper written notice with the Court and appointing the undersigned counsel of  record as Class Counsel;

(c) Issue an Order holding each Defendant to be an "employer" as that term is defined under the FLSA;

(d) Grant a trial by jury as to all matters properly triable to a jury;

#325656

(e) Issue a judgment declaring that Plaintiff and the class he represents were covered by the provisions of the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

(f) Award Plaintiff proper payment for each overtime hour worked in the three years preceding the filing of this Complaint, calculated at one and one-half times the regular rate, and liquidated damages equaling 100% of overtime due Plaintiff, as required by the FLSA;

(g) Award each member of the class Plaintiff represents proper payment for each overtime hour worked in the three years preceding each class member's joining of this collective action, calculated at one and one-half times the regular rate, and liquidated damages equaling 100% of overtime due each class member Plaintiff, as required by the FLSA;

(h) Award Plaintiff and each member of the class he represents prejudgment interest on all amounts owed;

(i) Award Plaintiff and each member of the class he represents nominal damages;

(j) Award each Plaintiff and each member of the class they represent their reasonable attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216(b); and

#325656

(k) Award any and such other further relief this Court deems just, equitable and proper.

Respectfully submitted this 4th day of December, 2015.

/s Ryan M. Goudelocke
Steven G. Durio (#05230)
durio@dmsfirm.com
Ryan M. Goudelocke (#30525)
ryan@dmsfirm.com
Daniel J. Phillips (#32921)
dan@dmsfirm.com

**DURIO, McGOFFIN, STAGG**
**& ACKERMAN**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA   70505-1308
(337) 233-0300     Telephone
(337) 233-0694     Facsimile

/s/ Mitchell D. Benjamin
Mitchell D. Benjamin
Georgia Bar No. 049888
benjamin@dcbflegal.com
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375
kevin.fitzpatrick@dcbflegal.com
Charles R. Bridgers.
Georgia Bar No. 080791
charlesbridgers@dcbflegal.com

**DeLONG, CALDWELL, BRIDGERS,**
**FITZPATRICK & BENJAMIN LLC**
3100 Centennial Tower
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 979-3150     Telephone
(404) 979-3170     Facsimile

**ATTORNEYS FOR PLAINTIFF**
**AND CLASS**

#325656