## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RUDOLPH WORDLAW, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, </br></br>  Plaintiffs, </br></br> v. </br></br> FLOWERS FOODS, INC. AND FLOWERS BAKING COMPANY OF VILLA RICA, LLC, </br></br> Defendants. | CIVIL ACTION NO: </br> 3:15-CV-00187-TCB-RVG |

## DEFENDANT'S REPLY REGARDING PROPOSED COMMUNICATIONS AND RESPONSE TO PLAINTIFFS' MOTION TO ALLOW PRE-CERTIFICATION OPT-IN NOTICES

This is an FLSA action in which Plaintiffs have not yet moved for conditional certification under Section 216(b). At issue before the Court is whether Defendant Flowers Baking Co. of Villa Rica, LLC ("Defendant") may issue proposed communications to its distributors offering an Amendment to the Distributor Agreement, which contains an arbitration agreement.[1] The

---

[1] This Amendment is not specifically targeted at putative plaintiffs in this action. Rather, this is a process that began before this lawsuit and like Amendments have been offered by Flowers subsidiaries to distributors across the country in areas where litigation is not pending or where Court approval has been obtained.

Amendment is voluntary; distributors may freely choose to accept or reject it, without penalty or repercussion. To avoid even the appearance of the proposed communication being coercive or misleading (given that this and other putative FLSA collective actions are pending), Defendant prepared a Notice to go with the proposed Amendment. The Notice gives distributors clear and unambiguous notice of the existence of this lawsuit and the effect of voluntarily accepting the Amendment to their Distributor Agreement. Defendant has not issued the communication to distributors who may be putative plaintiffs in this action. Instead, to be fully transparent on this issue, Defendant filed the instant motion with the Court seeking permission to do so and giving this Court the opportunity to make any modifications to Defendant's proposed Notice it deems necessary.

Plaintiffs seek to take advantage of Defendant's Motion by asking the Court to allow Plaintiffs to solicit opt-ins before the parties have completed Phase I discovery and before Plaintiffs have moved for conditional certification as a collective action under the FLSA. Specifically, in response to Defendant's Motion, Plaintiffs filed a "Motion to Allow Pre-Certification Opt-In Notices." (Doc. 29-1, Resp.) Plaintiffs freely admit that Defendant may communicate with

the putative plaintiffs.[2]  Still, Plaintiffs argue that this Court should require Defendant to include with that communication an Opt-In Notice prepared by Plaintiffs, arguing that Defendant's Notice allegedly fails to inform distributors of certain information.  Without any factual or legal support, Plaintiffs assert Defendant's proposed communication is "coercive and misleading" and even "near-extortion on the part of Defendants."  (Doc. 29-1, Resp. at 6.)  Plaintiffs' Motion does nothing to show why Defendant's proposed communication is in any way inappropriate, yet it seeks the extraordinary and unprecedented relief of bypassing the FLSA procedures for certifying this case as a collective action and issuing notice to putative plaintiffs.  Significantly, Plaintiffs' counsel recently sought the same relief in a related case, which relief was denied.

---

[2] Plaintiffs' Response cites heavily to Rule 23 case authority from other jurisdictions.  Defendant is aware that LR 23.1C contains this Court's procedures through which communications with putative class members in Rule 23 actions may be supervised.  However, this is not a Rule 23 class action.  It is a FLSA § 216(b) case which Plaintiffs will seek to have certified as a collective action.  Although Local Rule 23.1 does not apply, Defendant nevertheless proactively brought this motion before the Court in the spirit of that rule for the very purpose of satisfying the Court that Defendant's communications with its Distributors will not be coercive or misleading.

### A. The weight of authority permits Defendant's communication to potential opt-ins.

Plaintiffs expressly admit that they are "not opposing[3] the right of the Defendants to communicate with the putative class members." (Doc. 29-1, Resp. at 7.) Instead, based solely upon the subject of that communication – a contract amendment that contains an arbitration agreement – Plaintiffs argue that "Flowers' proposed contact and communication with putative class members undermines the very purpose of Rule 23." (Doc. 29-1, Resp. at 4.) While Plaintiffs ignore that this is not a Rule 23 case, Defendant's communication is not improper under Rule 23, Section 216(b) of the FLSA, or any other standard. Further, in asking the Court to impose restrictions on Defendant's communications, Plaintiffs rely solely on cases in which the courts imposed corrective measures because the defendants had previously engaged in improper, coercive, or misleading conduct – circumstances that simply do not exist here.

Contrary to Plaintiffs' contention, courts have approved communications like those at issue in this Motion. Most recently, the Western District of Louisiana approved a virtually identical communication in a related case. In *Richard et al. v. Flowers Foods, et al.*, No. 15-CV-2557, 2016 WL 3039714 (W.D. La. May 24,

---

[3] Indeed, instead of styling their response as an opposition to Defendants' Motion, Plaintiffs styled their response as a Motion seeking to expand the communication.

2016), the district court granted an identical motion by a Flowers defendant under virtually identical circumstances involving the same law firms representing the parties in the instant action.[4]  The *Richard* court approved[5] the defendant's request to communicate with putative plaintiffs about the proposed Amendment to the Distributor Agreement, finding that Plaintiffs "submitted no evidence, much less any clear record evidence, of any abusive communications… There is no evidence that defendants misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined the class' confidence in, or cooperation with, class counsel."  *Richard*, 2016 WL 3039714, *2.  *See also O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013), *on appeal as O'Connor v. Uber Techs.*, No. 14-16078 (9th Cir. June 30, 2014) (potential opt-ins could be approached about executing arbitration agreement where communications are clear and appropriate disclosures are included); *Green v. Plantation of Louisiana, LLC*, No. 10-0364, 2012 WL 4829328, at *1 (W.D. La. Sept. 17, 2012),

---

[4] A copy of the Court's Orders (one granting Flowers' motion and one denying Plaintiffs' request for reconsideration) are attached hereto as Ex. A.

[5] The Court ordered two minor changes to the proposed communication: listing the names of the multiple defendants in that action (which the defendants had already offered to do) and adding one sentence to identify which of the listed cases the Louisiana distributors have a right to opt into.  *See Richard*, 2016 WL 3039714.  Defendant does not oppose the same additions here, to the extent deemed appropriate by the Court.

*report and recommendation adopted*, 2012 WL 4829319 (W.D. La. Oct. 10, 2012) (enforcing arbitration agreements signed by putative plaintiffs after FLSA lawsuit was filed but before certification as a collective action, noting plaintiffs could "properly be approached by their employer without usurping this Court's authority" and in the absence of any evidence of abusive communications by the employer, "[t]he 'mere possibility of abuse' does not justify any remedial action by this court").

While Defendant has not located any case in the Eleventh Circuit in which an employer proactively sought court oversight in issuing communications or arbitration agreements such as those at issue here, authority from this Court shows that Plaintiffs must come forth with something more that the mere fact that the communication includes a proposed and voluntary arbitration agreement containing a class action waiver.  For example, in *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2014 WL 3519184, *1-3 (N.D. Ga. July 15, 2014), this Court enforced an arbitration agreement signed by a putative plaintiff in an FLSA action after the plaintiffs had moved for conditional certification, but before the putative plaintiff opted in.  The employer filed a motion to compel arbitration as to that putative plaintiff (after he opted in), and the plaintiffs argued the arbitration agreement was unconscionable and should be disregarded because it

was "executed during the pendency of a collective action for which the signatory may potentially have been a participant." *Id.* at *1.

Although the employer had not even informed the putative plaintiff of the existence of a pending action, the *Stevenson* Court found that the agreement was not unconscionable merely because it was entered into with putative plaintiffs during the pendency of the FLSA action, noting:

> Edwards argues that an otherwise permissible arbitration agreement is unconscionable if it was executed during the pendency of a collective action for which the signatory may potentially have been a participant. This argument fails. Regardless of whether there is a pre-existing collective action, the effect of the arbitration agreement is the same: it prevents the signatory from litigating her FLSA claim in a judicial forum.
>
> * * *
>
> Although this may incidentally affect the litigation by reducing the total number of participants, that alone does not compel the Court to disregard an otherwise valid arbitration agreement.
>
> * * *
>
> Edwards then argues that the Defendant ought to have informed her of the current litigation. But it is unclear how the Defendant's failure to discuss this case with Edwards interfered with the Court's managerial authority. To the extent that this is another argument for why the arbitration agreement is unconscionable, the Court is still unpersuaded. Even if Edwards was unaware of this litigation when she signed the arbitration agreement, she does not deny that the text of the arbitration agreement made it clear to her that she could not participate in an FLSA collective action suit, pre-existing or not.

7

*Stevenson*, 2012 WL 3519184, at *1-3 (internal citations omitted). The Court distinguished the case from those in which courts invalidated arbitration agreements with putative plaintiffs due to coercive, misleading, or otherwise improper tactics by the employer, such as intimidation, concealing the arbitration provision or using confusing language, and making the terms of the agreement mandatory for continued employment. *Id.* at *2; *compare with Billingsley v. Citi Trends, Inc.*, 560 Fed. Appx. 914 (11th Cir. 2014) (affirming trial court's refusal to enforce arbitration agreements signed during pendency of FLSA collective action due to employer misconduct, including mandating putative plaintiffs sign the agreement, and communicating through "back-room meetings that were 'highly coercive' and 'interrogation-like.'").

No such improper conduct is at play here; indeed, no conduct has even occurred. To the contrary, Defendant's Amendment is strictly voluntary (with a revocation provision) and Defendant has proposed clear and unambiguous notice of the arbitration agreement, class action waiver, and the effects thereof on this and other pending litigation. Accordingly, Defendant's proposed communication to putative plaintiffs is not inappropriate in any way.

8

### B. Defendant's proposed communication is proper, clear, and informative.

Defendant's proposed Notice already addresses all of the concerns raised by Plaintiffs. Plaintiffs argue in a conclusory fashion that Defendant's proposed Amendment is coercive because it does not properly inform class members of their rights. Specifically, Plaintiffs contend Defendant's proposed communication is improper because it fails to inform distributors: (1) about the filing of a "class action"[6] on their behalf; (2) that this action seeks damages for alleged "unpaid wages and overtime;" (3) that the Complaint identifies Flowers Foods and the Flowers entities operating in Georgia as defendants; and (4) fails to inform distributors that by signing the Amendment they are waiving their right to participate in this action. (Doc. 29-1, Resp. at 3-4.) Even a cursory review of the proposed communication (included with Defendant's Motion) shows that Plaintiffs are simply wrong.[7]

Defendant's proposed communications include proper disclosures purposely drafted to avoid any perception of coercion by incorporating at the outset the same type of notice imposed as a corrective measure by the *O'Connor* Court. For

---

[6] Here again, Plaintiffs have brought an FLSA claim, not a Rule 23 class action.

[7] The *Richard* court agreed. *Richard*, 2016 WL 3039714 at * 2.

example, the Notice (Doc. 26-3, Def.'s Memo., Ex. B) states in large, bold letters on the first page "**Please Read and Consider this Notice Carefully**" and advises the distributor to consult with an attorney before signing the Amendment. The Notice further provides the distributor the **ability to revoke** the Amendment within seven (7) days of signing. The Notice states, again in capitalized, bolded and underlined lettering:

> **THERE ARE NOW, AND MAY BE IN THE FUTURE, LAWSUITS AGAINST THE COMPANY AND/OR ITS AFFILIATES ALLEGING CLASS, COLLECTIVE, AND/OR REPRESENTATIVE CLAIMS ON YOUR BEHALF INCLUDING BUT NOT LIMITED TO CLAIMS FOR EMPLOYMENT STATUS AND OVERTIME. . . . THESE CASES NOW INCLUDE, FOR EXAMPLE, MORROW V. FLOWERS FOODS, ET AL., CASE NO. 3:07-CV-00617-MHT-TFM, WHICH IS PENDING IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA; AND *WORDLAW V. FLOWERS FOODS, INC. AND FLOWERS BAKING COMPANY OF VILLA RICA, LLC*, CASE NO. 3:15-CV-00187-TCB-RVG, WHICH IS PENDING IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA.**

(*Id*. at 2-3.) Defendant also included a neutral and accurate description of the subject matter of this lawsuit that unequivocally informs distributors of the claims they are waiving if they choose to sign the Amendment:

> **In *Wordlaw*, a distributor in Georgia has sued the Company on behalf of other distributors in Georgia, alleging violations of the Fair Labor Standards Act. There, the plaintiff contends that distributors have been improperly classified as independent**

10

> **contractors and are entitled to minimum wage and overtime compensation under federal law. The Company denies these allegations.**
>
> **The mere existence of such class, collective, and/or representative lawsuits, however, does not mean that such lawsuits will ultimately succeed. <u>But if you agree to arbitration with the Company, you are agreeing in advance that you will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit.</u>**

(*Id.* at 3.) And as distributors are informed in both the Notice and the Amendment, the very decision of whether to agree to the Amendment (and arbitration) is completely voluntary. Indeed, distributors can change their mind and revoke within a period of time after signing. As such, there is a complete absence of coercion.

Further, the purpose of Defendant's Motion is to provide the Court with the proposed communication for approval *before* engaging in direct communications with putative plaintiffs. This significant fact distinguishes this case from those cited by Plaintiffs, all of which address vastly different factual scenarios, such as intentional misrepresentations by defendants, failure to disclose the existence of ongoing litigation, seeking arbitration agreements only from putative plaintiffs, and other improper conduct, none of which exists in the instant case. *See, e.g., Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 666-67 (E.D. Tex. 2003) (defendant mailed

letters to potential class members immediately before court-issued notice of the collective action and presented misleading information regarding the litigation, including characterizing the suit as an attack on the plaintiffs' status as professionals, insinuating negative conceptions about plaintiffs' attorneys, misrepresenting the claims and amount of recoverable damages in the lawsuit, and suggesting that participation in the lawsuit could endanger the class member's employment).

Simply put, Defendant's proposed Notice clearly informs distributors of each of the things Plaintiffs' Response asserts is missing: (1) it informs distributors of the existence of this pending litigation; (2) it informs distributors that this action seeks damages for alleged unpaid wages and overtime; (3) it identifies this action specifically, including by case number and court; and (4) it clearly and prominently informs distributors that signing the Amendment will waive any right to participate in this or any other class or collective action.

Plaintiffs provide no compelling factual or legal reason why the proposed communication is coercive, misleading, or in any other way improper such as to warrant any corrective action by the Court, much less the inclusion of a notice drafted by Plaintiff to solicit opt-ins before this lawsuit has been certified as a collective action.

### C. Response to Plaintiffs' Motion to Allow Pre-Certification Opt-In Notices

Plaintiffs' Response (Doc. 29 and 29-1) is titled as both a response to Defendant's pending motion as well as a separate motion filed by Plaintiff "to allow pre-certification opt-in notices."[8] To the extent the Court accepts Plaintiffs' Response as a separate motion, Defendant requests that the Court accept this brief as its Response.

In response to Plaintiffs' motion, Defendant first notes that Plaintiffs are moving pursuant to Rule 23(d)(2), which governs altering or amending a court's "order under Rule 23(d)(1)." Fed. R. Civ. P. 23(d)(2). Rule 23(d)(1) provides for orders a district court may enter to manage cases where a class has been sought or certified under Rule 23(b)(1), (b)(2), or (b)(3). Indeed, Rule 23(d)(1) limits itself to Rule 23 class actions: "In conducting an action under *this rule,* the court may issue orders…" Fed. R. Civ. P. 23(d)(1) (emphasis added). This case is not a class

---

[8] Plaintiffs have not yet moved to have this case conditionally certified as a collective action under Section 216(b), nor does Plaintiffs' Response purport to be such a motion. Indeed, the parties have agreed to – and the Court ordered – a phased discovery plan, wherein Phase I discovery allows both sides to explore whether this case is appropriate for collective action treatment and provides a deadline following Phase I discovery by which Plaintiffs may move for conditional certification. The parties have only just begun Phase I discovery. To the extent Plaintiffs co-titled their Response a "Motion to Allow Pre-Certification Opt-In Notices" in order to create an opportunity for Plaintiffs to file a surreply, Defendant objects.

13

action; it is a putative collective action under Section 216(b) of the FLSA. Plaintiffs are simply attempting to use this motion to make an end run around the collective action certification procedures provided for in Section 216(b), all without citing any legal authority to provide Plaintiffs the relief they request.

Not a single case supports Plaintiffs' request to have Defendant include opt-in notices with its proposed communications. Based upon Plaintiffs' conclusory argument that Defendant's Notice is coercive, they argue that the only appropriate remedy is to include their proposed Opt-In Notice with Defendant's communication, without Plaintiffs being required to meet their burden in moving for conditional certification. Such relief would be extraordinary and is completely without basis in law or fact. As set forth above, there are no deficiencies in Defendant's Notice. Moreover, Plaintiffs failed to cite to any authority – nor has Defendant uncovered any – to support their request that the Court allow them to bypass the collective action certification procedures and send a pre-certification Opt-In Notice under any set of circumstances. Significantly, the Court in *Richard* (which actually included a Rule 23 class claim in addition to the FLSA claim) denied Plaintiffs' request to include the same proposed Opt-In Notice with the defendant's communications to its distributors. *Richard*, 2016 WL 3039714.

For all the foregoing reasons, Defendant opposes Plaintiffs' attempt to include their own notice soliciting opt-ins with Defendant's business communications. Defendant therefore requests that the Court grant Defendant's motion and deny Plaintiffs' motion in its entirety.

Undersigned counsel certify that the instant brief has been prepared in Time New Roman 14-point font, as approved in Local Rule 5.1B.

Respectfully submitted this 8th day of July 2016.

>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
> s/Michael Oliver Eckard
>Kevin P. Hishta (GA Bar No. 357410)
>Michael Oliver Eckard (GA Bar No. 238550)
>Erika L. Leonard (GA Bar No. 565965)
>191 Peachtree Street, NE, Suite 4800
>Atlanta, GA 30303
>Telephone: (404) 881-1300
>Facsimile: (404) 870-1732
>kevin.hishta@ogletreedeakins.com
>michael.eckard@ogletreedeakins.com
>erika.leonard@ogletreedeakins.com
>
>Margaret S. Hanrahan (GA Bar No. 578314)
>201 South College Street, Suite 2300
>Charlotte, NC 28244
>maggie.hanrahan@ogletreedeakins.com
>
>*Attorneys for Defendant FBC of Villa Rica Baking Company, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RUDOLPH WORDLAW, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC. AND FLOWERS BAKING COMPANY OF VILLA RICA, LLC,<br><br>Defendants. | CIVIL ACTION NO:<br>3:15-CV-00187-TCB-RVG |

**CERTIFICATE OF SERVICE**

I certify that on this date I electronically filed the foregoing **DEFENDANT'S REPLY REGARDING PROPOSED COMMUNICATIONS AND RESPONSE TO PLAINTIFFS' MOTION TO ALLOW PRE-CERTIFICATION OPT-IN NOTICES** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to counsel of record.

This 8th day of July 2016.

                                              *s/Michael Oliver Eckard*
                                              Michael Oliver Eckard
                                              Georgia Bar No.  238550